[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14601
Non-Argument Calendar
_____

D.C. Docket No. 4:18-cv-00152-CDL

JAMES DAVIS,

Plaintiff-Appellant,

versus

COLUMBUS CONSOLIDATED GOVERNMENT,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(September 28, 2020)

Before MARTIN, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

James Davis, a former employee of Columbus Consolidated Government, appeals the district court's grant of summary judgment for Columbus in his civil suit alleging that the city unlawfully discriminated against him in violation of the Americans With Disabilities Act, 42 U.S.C. § 12112. He argues that the district court erred in granting Columbus's motion for summary judgment because Columbus failed to present specific and particularized evidence that his request for a nine-week leave of absence to recover from surgery would cause an undue hardship. After a careful review of the record and the parties' briefs, we affirm.

I.

Davis worked as a bus operator for Columbus's public transportation service from 2004 to December 2015. The job description for a bus operator showed that the position required, among other things, frequent bending, squatting, climbing, lifting up to 25 pounds, and pushing occupied standard wheelchairs.

In late 2015, Davis began missing work due to neck pain related to spinal stenosis. He soon exhausted his regular leave and in November 2015, Davis's 12 weeks of leave under the Family and Medical Leave Act expired as well. Davis's doctor advised that Davis needed cervical spine surgery, which had been scheduled to take place on December 18, 2015. His doctor provided a certification stating that Davis could not safely operate a bus or "push, pull, lift, carry, reach," or engage in "over head activities," though he could work in a "clerical position/light

2

duty" until his surgery date, and that he would require an additional six weeks off after the surgery to recover.

Davis wrote to Columbus and requested light duty and an additional nine-week unpaid leave of absence after the expiration of his FMLA leave so that he could undergo and recover from surgery.  Columbus denied Davis's requests, explaining that clerical light duty work was not available for bus operators, and that an extension of his leave of absence would "create an undue hardship" on the transportation department and "limit its ability to provide service to citizens." Columbus terminated Davis's employment in December 2015 but encouraged him to apply for vacant positions with the city once his doctor cleared him to return to full duty.

Davis filed a complaint against Columbus asserting that it had discriminated against him by refusing to provide him with a reasonable accommodation for his disability, in violation of the ADA.  Columbus moved for summary judgment, arguing that Davis could not establish a prima facie case of discrimination under the ADA because his requested accommodations were unreasonable, and that, in any event, his requested nine-week leave of absence would have caused an undue hardship for the city.

In support of its motion, Columbus submitted an affidavit from the director of its human resources department, Reather Hollowell, testifying that Columbus

3

denied Davis's request for light duty because he was not physically able to perform the light duty of cleaning buses that was occasionally available for bus operators, and he was not qualified to work in a clerical or administrative position. Hollowell further testified by deposition that Davis's request for an extended leave of absence would have caused undue hardship for the city because it could not fill Davis's position while he remained on leave, the department had no part-time personnel to help with his routes, and it would not have been feasible to hire a temporary driver to replace him during the leave period, given the time required to hire and train a new bus operator.

Columbus also submitted testimony from Rosa Evans, the director of its department of transportation, stating that in the fall of 2015, the department had 41 budgeted bus operator positions to run nine bus routes from 4:30 a.m. to 8:30 p.m., six days per week. Every bus had to be manned, so when a bus operator position was vacant or a bus operator was absent, the department had to force other bus operators to fill in during their free time, incurring significant overtime costs in the process. As an example, if the department had four bus operator vacancies, Columbus would have to spend approximately $112,000 per year in additional overtime, which amount would increase with the number of vacancies. Forced overtime also led to a loss of personnel and additional vacancies when employees quit due to overburdened schedules.

4

Evans further testified that the recruitment and training of bus operators to fill vacant positions took "some time," and the time that a bus operator position remained vacant cost Columbus "significant time in rescheduling with limited resources" to manage the bus routes. Evans further testified that the department did not "have the luxury to allow a person to hold a budgeted position for an extended leave," and that she would not have approved Davis's request for extended leave because of overtime costs, the precedent it would set for other bus operators, and "the confusion resulting to the bus-assignment and route system."

In response to Columbus's motion for summary judgment, Davis argued that his requested leave of absence was a reasonable accommodation because it was not open-ended—he provided a firm date when he could return to work without restrictions. Davis submitted the testimony of his doctor, who stated that when he recommended cervical spine surgery for Davis, he expected that Davis would be unable to perform his work as a bus operator for six weeks after the surgery, but that he did not have any concerns that Davis would need additional recovery time after the six-week period. He further testified that Davis appeared to have recovered from his surgery as expected.

Regarding Columbus's claim of undue hardship, Davis did not contest the city's statement of undisputed facts or the testimony of Hollowell and Evans regarding the impact of absent bus operators on the department of transportation,

5

but asserted that Columbus had not provided evidence that he was terminated because of any specific budgetary concerns.  Along the same lines, he argued that although Hollowell testified that a shortage of bus drivers would cause undue hardship, her testimony did not show specifically that Davis's absence for nine weeks would cause such hardship.

The district court concluded that the undisputed evidence demonstrated that Davis's requested nine-week leave would cause increased overtime expenses, overburdened operators, and increased recruiting and training costs, thereby imposing an undue hardship on Columbus.  The court therefore granted Columbus's motion for summary judgment.  Davis now appeals.

## II.

"We review a district court's grant of summary judgment *de novo*, viewing all the evidence, and drawing all reasonable factual inferences, in favor of the nonmoving party." *Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2017).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.*, 229 F.3d

1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).

The ADA prohibits employment discrimination against a qualified individual on the basis of disability.  42 U.S.C. § 12112(a).  To make out a prima facie case of discrimination in violation of the ADA, a plaintiff must show that "(1) he has a disability; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability."  *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000).  The ADA defines a "qualified individual" in the employment context as "an individual who, with or without reasonable accommodation, can perform the essential functions" of the relevant position.  42 U.S.C. § 12111(8).  An employer unlawfully discriminates against a qualified individual on the basis of disability when the employer fails to make "reasonable accommodations" for a disabled individual—unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation" of its business.  *Id.* § 12112(b)(5)(A).

The employee bears the burden of identifying an accommodation and showing that it is reasonable.  *Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir. 2016).  Once the plaintiff identifies a reasonable accommodation, however, the employer has the burden of persuasion regarding whether the accommodation would impose an undue hardship.  *Holbrook v. City of Alpharetta*, 112 F.3d 1522,

1526 (11th Cir. 1997).  To meet its burden of proof, the employer "must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances."  *US Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002).  Undue hardship "is a complete defense to ADA liability."  *EEOC v. St. Joseph's Hosp. Inc.*, 842 F.3d 1333, 1349 (11th Cir. 2016).

The ADA defines "undue hardship" as "an action requiring significant difficulty or expense" when considered along with the following factors: (1) the nature and cost of the reasonable accommodation; (2) the overall financial resources and number of employees of the affected facility, and the effect that the reasonable accommodation would have on the facility's expenses and resources or other impacts on the operation of such facilities; (3) the employer's overall financial resources, number and type of facilities, and number of employees; and (4) the type of operation run by the employer, "including the composition, structure, and functions of the workforce" as well as "the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question" to the employer.  42 U.S.C. § 12111(10)(A)–(B).

Here, we find no error in the district court's conclusion that Columbus met its burden of showing that Davis's requested nine-week leave of absence would cause "significant difficulty or expense," given the undisputed evidence regarding the size of the relevant workforce and the number of bus routes, the negative

8

impact of Davis's absence on the city's other bus operators, the difficulty of scheduling operators to cover its bus routes while holding open Davis's position, the cost of overtime pay, and the expected loss of trained and experienced personnel as a result of forced overtime.  Davis has never contested any of this evidence, but argues that the district court should have required Columbus to provide additional "particularized facts" showing the actual, rather than projected, costs of his requested nine-week leave.  As an example, Davis argues that Columbus could have provided a "roster evidencing employees they were forced to train and hire" during Davis's 12-week FMLA leave.  But the law does not require employers to gauge the potential impact of a requested accommodation on its operations with that level of specificity or certainty.

While the "undue hardship" inquiry is more particularized than the question of whether a proposed accommodation is reasonable, this means only that the impact of the employee's proposed accommodation must be assessed "in the context of the particular [employer's] operations."  *Willis v. Conopco, Inc.*, 108 F.3d 282, 286 n.2 (11th Cir. 1997) (quoting *Barth v. Gelb*, 2 F.3d 1180, 1187 (D.C. Cir. 1993)).  Demonstrating that a proposed accommodation "would impose an undue hardship," 42 U.S.C.A. § 12112(b)(5)(A), necessarily entails a projection of the potential costs and other impacts of a hypothetical change to the employer's operations; such an exercise usually does not permit the level of precision that

9

Davis advocates.  Columbus presented uncontested evidence showing that the extended absence of one of its bus drivers would cause "significant difficulty or expense" in the operation of its public transportation service.  42 U.S.C. § 12111(10)(A).  The ADA does not require more.  Accordingly, we affirm the entry of summary judgment in Columbus's favor.

**AFFIRMED.**